IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STONEGATE INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 21 C 3523 |
| | ) |
| ENSTAR (US) INC., a Delaware corporation, and CRANMORE (US) INC., a Delaware Corporation, | ) Judge Virginia M. Kendall |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stonegate Insurance Company ("Stonegate") sued Defendants Enstar (US) Inc. ("Enstar") and Cranmore (US) Inc. ("Cranmore") for tortiously interfering with reinsurance agreements between Stonegate and Fletcher Reinsurance Company, f/k/a Maiden Reinsurance North America, Inc. ("Fletcher"). Defendants move to dismiss. (Dkt. 51). For the following reasons, Defendants' motion is granted. (Dkt. 51).

**BACKGROUND**

The Court briefly recounts prior proceedings in Stonegate's lawsuit, as this claim is before the Court for a second time on a motion to dismiss. (*See* Dkt. 37 at 11–15 (dismissing tortious-interference claim); Dkt. 48 at 2 (granting leave to amend complaint)). The Court accepts all factual allegations from Stonegate's Amended Complaint, (dkt. 49), and assumes they are true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Stonegate is an Illinois insurance company with its principal place of business in Niles, Illinois. (Dkt. 49 ¶ 2). Enstar (US) Inc. ("Enstar") and Cranmore (US) Inc. ("Cranmore") are both Delaware corporations based in Florida and wholly owned subsidiaries of Enstar Group Ltd., a

1

Bermuda entity. (*Id.* ¶¶ 3–4). Fletcher Reinsurance Company, f/k/a Maiden Reinsurance North America, Inc. ("Fletcher"), provided reinsurance coverage for Stonegate policies under contracts from 2012 through 2017. (*Id.* ¶ 11). The Enstar Group acquired Fletcher in December 2018, and Enstar and Cranmore contracted with Fletcher to service their reinsurance contracts with Stonegate. (*Id.* ¶¶ 5–6).

Stonegate sued Fletcher for breach of contract, Enstar and Cranmore for tortious interference with contract, and all three defendants for bad-faith refusal to pay claims under 215 ILCS 5/155 ("Section 155"). (Dkt. 1-2). This Court dismissed with prejudice Stonegate's breach-of-contract claims against Fletcher so they could proceed in arbitration. (Dkt. 37 at 4–7). The Court also dismissed Stonegate's tortious-interference claim against Enstar and Cranmore, (dkt. 37 at 15; *id.* at 17); granted Stonegate leave to amend this claim, (dkt. 48 at 2); and denied reconsideration of the Section 155 claim's dismissal against all defendants as a manifest error of law, (*id.* at 2–4). Stonegate amended its complaint realleging tortious interference. (Dkt. 49).

Much of the Amended Complaint restates Stonegate's contract dispute with Fletcher over wrongfully denied and delayed payments of claims under the reinsurance contracts Defendants serviced. (*Compare* dkt. 1-2 ¶¶ 10–38, 41 *with* dkt. 49 ¶¶ 11–39 (describing adversarial relationship between the parties and Fletcher's conduct on the "Clay Claim")). Stonegate alleges additional examples of Fletcher—on Defendants' direction—wrongfully delaying payment of valid claims and then paying them via "improper" offsets against premium adjustments. (*See* dkt. 49 ¶¶ 40–42 (describing Fletcher's conduct on the "Mobile Transport Claim"); *id.* ¶¶ 43–48, 54 (describing Fletcher's conduct on the "Q West Claim")).

Stonegate alleges Defendants' conduct directing Fletcher to breach its reinsurance contracts with Stonegate was "malicious in an effort to harm Stonegate's business." (*Id.* ¶ 53). The

2

"blatant violation of the clear timing requirements" for payments under the reinsurance contracts shows Defendants' objective to injure Stonegate. (*Id.*) Defendants' direction to Fletcher to withhold payment was further "a malicious attempt to force Stonegate to either sacrifice its right to payment of that valid claim or incur substantial costs in bringing [Fletcher] and Enstar to court to seek relief for the wrongful withholding of claims payments." (*Id.*)

Stonegate further alleges Defendants' direction of Fletcher's breach of contract was done "with the knowledge and malicious intent that [Fletcher]'s improper failure to pay the uncontested Q West Claim in full by the end of 2021 would require Stonegate to report that claim as unpaid in regulatory filings, causing further harm to Stonegate." (*Id.* ¶ 55). Finally, Stonegate alleges Defendants' interference with the reinsurance contracts harmed Fletcher's interests because this pattern of directing Fletcher to breach its contracts requires Fletcher to incur legal costs and attorneys' fees with its insureds, including Stonegate. (*Id.* ¶ 56). Thus, Stonegate alleges Defendants' "independent interest in reducing coverage obligations for its reinsurance portfolio in the aggregate is antagonistic and injurious to the interests of the individual reinsurers who, like [Fletcher], are called to account for the breaches directed by [Defendants] in legal proceedings . . . ." (*Id.*) Defendants' conduct allegedly damages Fletcher's business relationships with its cedent companies. (*Id.*)

Defendants Enstar and Cranmore now move to dismiss Stonegate's Amended Complaint. (Dkt. 51).

## **LEGAL STANDARD**

On a Rule 12(b)(6) motion to dismiss, the Court accepts "as true all factual allegations in the amended complaint and draw[s] all permissible inferences in [the plaintiff]'s favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). The complaint's "short and

plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), must offer more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, to survive a defendant's motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## BACKGROUND

Tortious interference with contract under Illinois law requires a plaintiff to plead and prove:

> (1) the existence of a valid and enforceable contract between plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of the defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result.

*Bank Fin., FSB v. Brandwein*, 36 N.E.3d 421, 430 (Ill. App. Ct. 2015). Yet Illinois also recognizes a conditional privilege in tortious-interference claims where a defendant acts "to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989) (recognizing hospital management companies as agents owing duty of loyalty to their hospitals analogous to that of corporate officers and directors in managing their corporations).

A defendant-agent is conditionally privileged to interfere with its principal's contracts. *Citylink Group, Ltd. v. Hyatt Corp.*, 729 N.E.2d 869, 877 (Ill. App. Ct. 2000) ("[A]gents are normally privileged against claims that their activities interfered in a third party's relationships with their principals."); *Nation v. Am. Cap., Ltd.*, 682 F.3d 648, 652 (7th Cir. 2012) (holding corporate entity acting as agent for company had conditional privilege to interfere with company's contracts). This follows from the fundamentals of agency law because "the acts of an agent are

4

considered in law to be the acts of the principal," *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998), and a "party cannot tortiously interfere with its own contract." *Bosch v. NorthShore Univ. Health Sys.*, 155 N.E.3d 486, 507 (Ill. App. Ct. 2019).

This Court has already established that Defendants Enstar and Cranmore acted as Fletcher's agents in servicing its reinsurance contracts with Stonegate. (Dkt. 37 at 12–13). Their interference was therefore privileged. Stonegate bears the burden to overcome this privilege by pleading and proving Defendants' conduct was malicious or unjustified. *See HPI Health Care*, 545 N.E.2d at 677–78; *Citylink Group, Ltd.*, 729 N.E.2d at 877.

"Malicious" in the context of tortious-interference claims simply means "intentional and without justification," *HPI Health Care*, 545 N.E.2d at 677, so the question becomes whether Defendants' conduct was unjustified. *Id.*; *see also, e.g.*, *Creation Supply, Inc. v. Hahn*, No. 19 C 6063, 2022 WL 2291225, at *14 (N.D. Ill. June 24, 2022) (applying *HPI Health Care*). Conduct "which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege" is unjustified. *HPI Health Care*, 545 N.E.2d at 678. As an example of such conduct, the Illinois Supreme Court explained in *HPI Health Care* that

> a hospital management company, whose privilege is based upon the management company's role in exercising business judgment on behalf of the company's hospital, would not be justified in inducing a breach of contract *solely* for the management company's gain, or *solely* for the purpose of harming the plaintiff, since such conduct would not have been done to further the hospital's interests.

545 N.E.2d at 678 (emphasis added).

Furthermore, a defendant-agent's conduct is unjustified when the plaintiff alleges and proves the defendant-agent "acted in its own interests *and* contrary to the interests of its principal." *Bosch*, 155 N.E.3d at 507 (quoting *Citylink Group, Ltd.*, 729 N.E.2d at 877) (emphasis added). But when the defendant-agent acts in a manner consistent with the principal's interest, its

5

inducement of the principal to breach a contract with a third party is justified and therefore privileged. *Cf. Nation*, 682 F.3d at 652 ("Because the interests of corporate officers, directors, and shareholders [as agents] are sufficiently aligned with those of the company, they generally cannot be liable in tort when they interfere with the company's contracts for the benefit of the company.").

Here, Stonegate fails to plead sufficient facts to overcome Defendants' privilege to interfere with Fletcher's contracts. Accepting all Stonegate's alleged facts as true, the Court assumes Defendants directed Fletcher to breach its reinsurance contracts with Stonegate, and that Fletcher did breach its contracts, incurring damages for Stonegate.[1] But Plaintiff alleges no facts showing Defendants acted either with the sole motive to harm Stonegate's interests or the sole motive to benefit Defendants' own self-interest, in opposition to Fletcher's interest.

Stonegate instead recycles allegations of Fletcher's denial of coverage of the Clay Claim nearly verbatim from its original complaint, (*compare* dkt. 1-2, ¶¶ 10–38, 41 *with* dkt. 49 ¶¶ 11–39), and then adds additional examples of alleged breaches. (Dkt. 49 ¶¶ 40–48, 54 (recounting Fletcher's wrongfully delayed and withheld payments on the "Mobile Transport Claim" and the "Q West Claim")). Stonegate then labels Defendants' direction to Fletcher to withhold payment on these claims as a "malicious" attempt by Defendants "to harm Stonegate's business" because it forces Stonegate to litigate these claims. (*Id.* ¶ 53). But a breach of contract—or even successive breaches of contract—is not malicious just because it harms a plaintiff's contractual rights by forcing the plaintiff to choose between sacrificing what is owed or incurring legal expenses to collect damages. If it were, every breach of contract would be "malicious" because every breach injures the non-breaching party's contractual rights. Simply labeling successive contract breaches

---

[1] The merits of Stonegate's breach-of-contract claims against Fletcher are proceeding in arbitration, pursuant to this Court's Order dismissing Fletcher from this action. (Dkt. 37).

6

as "malicious" falls short of the pleading standard required to state a claim for relief. *See Twombly*, 550 U.S. at 555.

Furthermore, Stonegate cannot sustain a reasonable inference that Defendants acted either with the sole motive of harming Stonegate or with the sole motive of promoting their own self-interest. *See HPI Health Care*, 545 N.E.2d at 678 (explaining defendant is unjustified in inducing breach of contract solely for its own gain or solely to harm plaintiff). Stonegate alleged Defendants acted "with the knowledge and malicious intent" to harm Stonegate because Defendants knew withholding payment on valid claims would harm Stonegate in their required state insurance regulatory filings. (Dkt. 49 ¶ 55). Even if Defendants knew this, Stonegate has failed to plead any facts showing Defendants' conduct was *motivated by* this knowledge. There are no facts showing Defendants wanted to disadvantage Stonegate in its regulatory filings. Nor would there be. Stonegate incurring debt to satisfy Illinois's regulatory surplus requirements does not affect Defendants, and Defendants' knowledge that their conduct would harm Stonegate in its regulatory filings is distinct from their acting *with the intention to cause* such harm. As pled, an inference that Defendants induced Fletcher to breach its contracts solely with the motivation to harm Stonegate in this way is nothing more than a speculative repackaging of Defendants' conduct as "malicious" and unjustified. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Moreover, Stonegate fails to plead facts showing that Defendants acted solely in their own self-interest and in opposition to their principal Fletcher's interests. Just as this Court found in its prior consideration of Stonegate's tortious-interference claim, Stonegate's allegations show only that Defendants' conduct—reducing their reinsurance portfolio's liability exposure and thereby increasing their profits—is "inextricably entwined" with reducing Fletcher's liability. *See* Dkt. 37

7

at 14–15; *see also Creation Supply, Inc. v. Hahn*, No. 19 C 6063, 2020 WL 4815905, at *6 (N.D. Ill. Aug. 19, 2020). In its Amended Complaint, Stonegate adds that Defendants' actions are prejudicial and injurious to Fletcher's interests because Fletcher must defend itself needlessly against breach-of-contract claims like the one Stonegate brought, while Defendants profit. (Dkt. 49 ¶ 56). This assertion fails.

In the first place, to accept this argument, the Court would have to make assumptions on the merits of the breach-of-contract claims themselves. The Court would have to assume Stonegate is bringing valid, non-frivolous claims against Fletcher. If Stonegate's claims have no merit, Defendants' directions are consistent with Fletcher's interests. Alternatively, the Court would have to assume Fletcher has no meritorious defense against Stonegate's claims. If Fletcher has meritorious defenses to Stonegate's claims, then presumably Fletcher saves money by defending them rather than paying out claims it has no legal obligation to pay. But the merits of Stonegate's breach-of-contract claims against Fletcher are not before this Court.

Even assuming, without deciding, Stonegate has valid claims against Fletcher to which Fletcher (and by extension, Defendants) has no meritorious defenses, Stonegate's claim still fails. The fact that Defendants' conduct resulted in legal costs and attorneys' fees for Fletcher does not sustain a reasonable inference that Defendants intentionally acted against Fletcher's interests, such that their conduct was unjustified. Stonegate essentially admits as much. Stonegate alleged Defendants' "practice of acquiring insurance companies, then directing the acquired insurers to contest and litigate valid claims so as to decrease the insurers' ultimate liability, is central to its self-described business model." (Dkt. 49 ¶ 15). Stonegate further quoted Enstar's 10-K filing: "We employ an opportunistic commutation strategy in which we negotiate with policyholders and claimants with the goal of commuting or settling existing insurance and reinsurance liabilities at a

discount to the ultimate liability." (*Id.*) In other words, Defendants litigate and negotiate many claims. But there is no showing they do so solely for the purpose of enriching themselves at the expense of their companies, as Stonegate alleges. Rather, as Stonegate here admitted, Defendants' professed goal is to reduce the *overall liability*, for themselves as well as their companies. Pursuing vigorous litigation in furtherance of this objective is ultimately a business decision. Whether it is a wise course of action is not for this Court to say, but it is well within the conditional privilege afforded to defendant-agents to exercise their discretion in conducting business on behalf of their acquired companies. *See HPI Health Care*, 545 N.E.2d at 157.

Finally, Stonegate alleges no facts showing Defendants acted illegally in any way that is not duplicative of the underlying breach-of-contract claims against Fletcher. *See HPI Health Care*, 545 N.E.2d at 678 (citing *Prudential Ins. Co. v. Van Matre*, 511 N.E.2d 740, 745 (Ill. 1987) (holding illegal for purposes of wrongful interference conduct that violated statutory provisions or public policy, or conduct involving misappropriation of confidential information)). This Court dismissed claims Defendants and Fletcher violated Section 155 of the Illinois Insurance Code, (dkt. 37 at 15–17), and denied Stonegate's Motion for Reconsideration. (Dkt. 48 at 2–4). Stonegate's Amended Complaint contains no additional allegations of any illegal means Defendants used to induce Fletcher to breach its contracts with Stonegate.

## **CONCLUSION**

Stonegate's tortious-interference claim against Defendants Enstar and Cranmore is, at heart, simply repackaged breach-of-contract claims against Fletcher. Those claims are proceeding in arbitration. Stonegate has now twice failed to overcome Defendants' conditional privilege against tortious-inference claims for allegedly inducing Fletcher to breach contracts with

9

Stonegate. Defendants' Motion to Dismiss [51] is granted, and Stonegate's Second Amended Complaint [49] is dismissed with prejudice.

Date: October 18, 2022

_____
Virginia M. Kendall
United States District Judge